## Collier v. Ernst

*Ralph L. Lindenmuth*, for plaintiff.

*R. Paul Lessy* and *William T. Connor*, for defendant.

ERVIN, J., April 17, 1942. — Complainant, Horace Griffith Collier, filed a bill in equity to restrain respondent, Barbara Ernst, from manipulating, operating, using, and playing a marimba instrument in such a manner as to be a nuisance and an annoyance to complainant and other persons residing in the community. An answer was filed denying the averments of the bill and denying that the actions of respondent in playing the aforesaid instrument constituted a public or private nuisance. A stipulation was filed amending the

caption of the case so that respondent's name should be Bobbe Ernst instead of Barbara Ernst, and also making a similar change wherever the name occurred in the bill of complaint. Trial was had on September 3 and 4, 1941, at which the testimony of numerous witnesses was heard and by which the playing of the marimba by respondent was fully described. Requests for findings of fact and conclusions of law, together with briefs, were handed to the court on April 11, 1942, for the purpose of assisting the court in preparing an adjudication.

From the pleadings, testimony, and requests we make the following

*Findings of fact*

1. Complainant is a resident of Brookline, Haverford Township, Delaware County, Pa., and resides at No. 219 Sagamore Road, where he has lived for 21 years.

2. Respondent is a resident of Brookline, Haverford Township, Delaware County, Pa., and resides at No. 220 Sagamore Road, where she has lived for 17 years.

3. Respondent has possessed and used in her own home a musical instrument known as a marimba for a period of approximately six years.

4. The tone of the marimba used by respondent is musical and melodious.

5. Respondent has for a long period of time played and manipulated the said marimba so constantly and for such long periods of time and so loudly that it disturbs the peace and quiet of the neighborhood.

6. Respondent has played songs or tunes intended to annoy and disturb her neighbors.

7. Respondent has on a great many occasions played the song "Jingle Bells" to disturb complainant, Horace Griffith Collier.

8. Respondent played the tune "When Irish Eyes Are Smiling" upon many occasions when Mr. Leo J.

Kelly enters or leaves his home, and that the same is intended to annoy and disturb him.

9. Respondent played the tune "Anchors Aweigh" on many occasions when a naval officer who lives in the neighborhood enters or leaves his home, with the intention to annoy and disturb him.

10. Respondent on many occasions played the tune "Little Old Lady" when Mrs. Broadbelt, an elderly woman, was entering or leaving her home, with the intention of annoying and disturbing her.

11. Respondent plays the said instrument so loudly and with such volume that the sound and vibration can be heard for a distance of 250 to 300 feet.

12. Respondent plays the said musical instrument for a great many hours each day and has, in effect, played it from 9:00 a. m. on Sundays until eleven or twelve o'clock at night; said period being interrupted only briefly for rest and meals.

13. On weekdays respondent plays the said instrument as early as nine o'clock in the morning and continues until about eleven o'clock at night, in two-hour periods.

14. Respondent, while practicing on said instrument, often plays particular notes for as long as an hour at a time.

15. By playing the said instrument at the times and in the manner as aforesaid respondent has disturbed the peace and quiet of the neighbors in that they were compelled to keep their windows closed, were unable to sleep, were made nervous and irritable and, in certain cases, it affected the work of certain individuals.

16. Respondent has played and manipulated the said instrument in such a manner that it interfered with the rest and well-being of neighbors and their children who were confined to their homes and beds because of illness.

17. Respondent has played the said instrument during hours that were not reasonable and for such long

4

periods of time that it disturbed the comfort, peace, and quiet of the neighbors.

18. The community surrounding the home of the respondent is a residential neighborhood.

19. Certain neighbors in the vicinity of the homes of complainant and respondent own radios and play them on occasion, and on some occasions the neighbors attempt to drown out the marimba by the loud playing of the radios.

20. Respondent is a good and skillful player of a marimba.

### Discussion

Complainant and respondent, together with their witnesses, reside in Brookline, in a neighborhood which is purely residential in character. Many of the people residing in this neighborhood have lived there for a great many years. The homes of these people are largely single-family residences located in rather close proximity to each other. Respondent, for the past six-year period, has possessed and played a musical instrument known as a marimba for such long periods of time that it disturbed the peace and quiet of the neighborhood and affected the nerves of many ordinary and reasonable persons residing in the immediate vicinity. Not only did respondent play the instrument for too long and continuous periods of time, but she also purposely annoyed certain of her neighbors by playing certain selections which were intended to musically describe and characterize such persons. For examples, she characterized one man's resemblance to Santa Claus by playing "Jingle Bells"; a naval officer by playing "Anchors Aweigh"; a man of Irish extraction by playing "When Irish Eyes Are Smiling"; and an elderly lady by playing "Little Old Lady". According to the testimony of a number of witnesses, respondent played the tunes of characterization on every occasion when she would see the intended victims of her musical assault. In time this method of attack had the desired

results and did actually annoy and disturb the victim of the assault. Respondent's conduct was considered by this court in another form of litigation. Respondent had been convicted of disorderly conduct and a summary appeal had been taken from such conviction to the court of quarter sessions. President Judge Fronefield heard the appeal and the record shows that the court found her guilty but never sentenced her. It was the feeling of the court upon that occasion that respondent would modify her conduct in such a manner as to remove the offensive character of the same. Respondent is capable of producing harmonious tones from the marimba and if she did this in reason no one would have any just complaint. The playing of a marimba is not a nuisance per se any more than is the playing of a radio or a piano or the singing of a song: Tonnelle v. Hayes et al., 118 Misc. 339, 194 N. Y. Supp. 181; Christie v. Davey, 1 L. R., Ch. Div. 316 (1893) ; Pope v. Peate, 7 Ont. L. R. 207.

It is only when a person does any of these things for such long, continuous periods of time that the very repetition, if continued long enough and often enough, produces an effect upon the nervous system of the average, normal individual. Necessarily such activity produces a greater effect upon people who are ill than it does upon people who are in the possession of normal health. In this connection the language of President Judge Hare in Harrison et al. v. The Rector, Church Wardens and Vestry of St. Mark's Church, 12 Phila. 259, 261, is especially appropriate:

"It does not necessarily detract from the force of these considerations if, as the defendants contend, the chiming of St. Mark's bells does not affect persons whose nerves have not been touched by disease. The question in every case should be: Do the acts complained of tend by a natural sequence to produce injury? and not what is the condition of persons who suffer from the wrong? Disease and age come as cer-

tainly in the course of nature as life and health, and are a reason why the court should extend rather than withdraw its protecting arm."

That was a case in which the lower court restrained a church from the ringing of bells or otherwise using the same so as to cause annoyance or nuisance by sound or noise to the complainants or any of them within their respective homes. The case was affirmed by the Supreme Court in The Appeal of St. Mark's Church, etc., an opinion which will be found in 34 Legal Intelligencer 222, with the slight modification that permitted the ringing of the chime of bells on Sunday for two minutes at thirty minutes before the time of commencing divine service and the ringing of the smallest bell alone for five minutes immediately before such time. Later on the Supreme Court further modified the order by limiting the ringing of the bells and chimes to the usual three divine services on Sunday forenoon, afternoon, and evening, and prohibited the ringing of them for any early morning service. The opinion of President Judge Hare in the St. Mark's Church case just referred to is a masterful one on this subject, and anyone who reads it will be very well rewarded for doing so. In that case and in Appeal of the Ladies' Decorative Art Club, 22 W. N. C. 75, the Supreme Court has clearly decided that a noise of sufficient degree or volume in a residential locality may of itself constitute a nuisance which a court of equity will restrain. By a per curiam opinion the decree of the lower court in the latter case was affirmed. President Judge Thayer wrote the opinion for the lower court. He states the law in the following language: "The law upon this subject is well settled and very plain. Where a noisy nuisance is complained of, it is a question of degree and locality. If the noise is only slight and the inconvenience merely fanciful, or such as would only be complained of by people of elegant and dainty modes of living, and inflicts no serious or substantial discomfort, a Court of Equity will not

take cognizance of it. No one has a right to complain that his next-door neighbor plays upon the piano at reasonable hours, or of the cries of children in his neighbor's nursery, nor of any of the ordinary sounds which are commonly heard in dwelling-houses. On the other hand, if unusual and disturbing noises are made, and particularly if they are regularly and persistently made, and if they are of a character to affect the comfort of a man's household, or the peace and health of his family, and to destroy the comfortable enjoyment of his home, a Court of Equity will stretch out its strong arm to prevent the continuance of such injurious acts. In regard to such a question, I may say with the Master of the Rolls, Sir George Jessel, in Broder v. Saillard (L. R. 2 Ch. Div. 692) 'If there were no authority in the question, I should have felt no difficulty about it, because I take it the law is this, that a man is entitled to the comfortable enjoyment of his dwelling-house. If his neighbor make such a noise as to interfere with the ordinary use and enjoyment of his dwelling-house so as to cause serious annoyance and disturbance, the occupier of the dwelling-house is entitled to be protected from it. It is no answer to say that the defendant is only making a reasonable use of his property, because there are many trades and many occupations which are not only reasonable but necessary to be followed, and which still cannot be allowed in the proximity of dwelling-houses so as to interfere with the comfort of their inhabitants.'

"A man has no right to bring a noisy trade or business into a neighborhood exclusively occupied by dwelling-houses, and to create there noises which destroy the peace and comfort of the occupants of those houses. If he does so, the occupants may maintain an action for damages against him, or, if the evil is of a character not to be compensated by damages and requiring speedy abatement, a court of equity will, without hesitation, stretch out its hand and prevent the continuance of the nuisance by writ of injunction.

"There are numerous places in which a noisy occupation can be carried on without detriment or discomfort to other people. If such a business is brought into a neighborhood consisting exclusively of dwellinghouses, and it is carried on in such manner that great personal discomfort and continual annoyance are occasioned thereby, those who suffer the injury are entitled to equitable relief against it. This is so well settled by our own as well as by the English decisions, that there is no necessity to appeal here to the books and the cases upon the subject. But the law was so clearly defined in regard to such injuries by Lord Chancellor Selborne in the case of Ball v. Ray (L. R., 8 Ch. App. 471), and his opinion is so applicable to the present case, that it will not be superfluous or inappropriate to repeat the language used by him in that case. 'If,' says he, 'the houses adjoining each other are so built that from the commencement of their existence, it is manifest that each adjoining inhabitant was intended to enjoy his own property for the ordinary purposes for which it and all the different parts of it were constructed, then so long as the house is so used there is nothing that can be regarded in law as a nuisance which the other party has a right to prevent. On the other hand, if either party turns his house, or any portion of it, to unusual purposes in such a manner as to produce a substantial injury to his neighbor, that is not, according to principle or authority, a reasonable use of his own property, and his neighbor showing substantial injury is entitled to protection.' "

The operation of an organ attached to a "merry-go-round" erected in a residential part of a city, outside the entrance of a park, which could be heard from 300 to 800 feet away, was restrained by an injunction in the case of Osthaus v. Robinson, 12 Dist. R. 25.

Our conclusion is that the playing of a marimba in a residential neighborhood is not of itself such a nui-

sance as a court of equity would restrain if it is done in a reasonable manner. If, however, the instrument is played in such a loud tone and for such long periods of time and at unreasonable hours, it will constitute a nuisance in a residential neighborhood which a court of equity will regulate. The situation presented in this case is similar to that employed in certain parts of this world where a person is compelled to remain in a certain position and to have drops of water fall continuously upon his head. At first no harmful results are felt. As the process is continued, however, the victim at first becomes nervous and then by various stages is brought to a condition of insanity and finally to death.

### Conclusions of law

1. That respondent, Bobbe Ernst, has played and manipulated her marimba in a manner so as to disturb the peace and quiet of the neighborhood in which she lives, to wit, in and about premises No. 220 Sagamore Road, Brookline, Haverford Township, Delaware County, Pa.

2. That respondent, by creating loud tones and noises at unreasonable hours of the day and night and for unreasonable periods of time during the day and night, has prevented complainant and the people in the neighborhood from enjoying their homes.

3. That respondent has interrupted unreasonably the peace and quiet of the neighborhood and by so doing has prevented complainant and other residents in the community from fully enjoying the comfort of their homes.

4. That respondent's loud and excessive playing of the marimba constitutes a nuisance.

5 That if respondent play the marimba at reasonable times and for reasonable periods of time and in a reasonable manner and tone, it would not constitute a nuisance.

6. That complainant is entitled to a decree enjoining and restraining respondent from playing and manipulating the marimba in the future in a manner and at such times and for such periods of time as to disturb the peace, quiet, and comfort of complainant and his neighbors.

7. That complainant is also entitled to a decree directing respondent to pay the costs.

## Decree nisi

And now, to wit, April 17, 1942, the above matter having come on to be heard on bill, answer, and proofs, it is ordered, adjudged, and decreed as follows:

1. Respondent, Bobbe Ernst, be and she is hereby perpetually enjoined from playing "Jingle Bells" with the intention and for the purpose of annoying and disturbing complainant, Horace Griffith Collier.

2. Respondent, Bobbe Ernst, be and she is hereby perpetually enjoined from playing "When Irish Eyes Are Smiling" with the intention and for the purpose of annoying and disturbing Leo J. Kelly.

3. Respondent, Bobbe Ernst, be and she is hereby perpetually enjoined from playing "Anchors Aweigh" with the intention and for the purpose of annoying and disturbing any naval officer.

4. Respondent, Bobbe Ernst, be and she is hereby perpetually enjoined from playing "Little Old Lady" with the intention and for the purpose of annoying and disturbing Mrs. Walter E. Broadbelt.

5. Respondent, Bobbe Ernst, be and she is hereby perpetually enjoined from playing a marimba on premises No. 220 Sagamore Road, Brookline, Haverford Township, Delaware County, Pa., on Sundays, except between the hours of 1 p.m. and 10 p.m., and on weekdays except between the hours of 9 a.m. and 10 p.m., and is perpetually enjoined from playing said instrument for aggregate periods of more than three hours on any one day, and for more than one hour at any one time.

6. Respondent, Bobbe Ernst, be and she is hereby perpetually enjoined from playing a marimba at any time on premises No. 220 Sagamore Road, Brookline, Haverford Township, Delaware County, Pa., in such loud tones or in such a manner as to disturb the peace and quiet of complainant and his neighbors.

7. Respondent, Bobbe Ernst, be and she is hereby perpetually restrained from permitting any other persons to play a marimba upon premises No. 220 Sagamore Road, Brookline, Haverford Township, Delaware County, Pa., in such a manner as to violate any of the provisions of this decree.

8. Respondent, Bobbe Ernst, pay the costs.